E-filed: February 4, 2010

Robert R. Kinas, Esq. (Nevada Bar No. 6019)
Claire Y. Dossier, Esq. (Nevada Bar No. 10030)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: rkinas@swlaw.com
       cdossier@swlaw.com
*Attorneys for City National Bank*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re                       | Case No. 09-27639-mkn |
|-----------------------------|------------------------|
| HIGHLAND STREET GROUP, LLC, | Chapter 11             |
| Debtor.                     | **REPLY TO DEBTOR'S OPPOSITION TO CITY NATIONAL BANK'S MOTION FOR RELIEF FROM AUTOMATIC STAY** |

City National Bank ("CNB") submits its Reply to Debtor's *Opposition to Motion for Relief from Automatic Stay* [Docket No. 43] (the "Opposition"), and in support of its *Motion for Relief from Automatic Stay* [Docket No. 33] (the "Motion").

This Reply is based on the following points and authorities, the pleadings, papers, and records on file, and any evidence or oral argument presented at the hearing.

DATED this 4th day of February, 2010.

SNELL & WILMER L.L.P.

By: _____
Robert R. Kinas, Esq. (NV Bar 6019)
Claire Y. Dossier, Esq. (NV Bar No. 10030)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
*Attorneys for City National Bank*

///

///

11148281.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Court should grant CNB's Motion pursuant to 11 U.S.C. § 362(d)(3) because Debtor, a "single asset real estate entity" ("SARE"), has failed to file a plan within 90 days of its chapter 11 petition for relief that has a "reasonable possibility of being confirmed within a reasonable time." The Motion sets two grounds for stay relief, Sections 362(d)(3) and (d)(2). Debtor's Opposition only addresses the latter ground, Section 362(d)(2), contending that the subject property has equity and is necessary for an effective reorganization. *See* Opp., at pp. 1-2. But the Court need never even reach the Section 362(d)(2) grounds and equity issue, because Section 362(d)(3) provides ample support for stay relief.

As an SARE, Debtor faces a truncated timeline to put together a plausible plan or begin making monthly interest payments. Here, Debtor has not presented any evidence to show that its proposed plan has a reasonable probability of being confirmed in a reasonable time. Debtor's monthly operating reports show that it has been operating at a steep loss, and Debtor has provided no evidence to show how, why, or when that will change. The Court should not permit a shell of a plan – lacking a disclosure statement or any meaningful discussion of Debtor's future business strategy – to stymie the purposes of Section 362(d)(3), and CNB's ability to proceed with its state court rights and remedies. Accordingly, and for the reasons set forth below, CNB respectfully requests that the Court enter an Order terminating the automatic stay.

## II.

## DISCUSSION

**A.    The Plan Will Not Be Confirmed Within a Reasonable Time**

Exactly ninety days after filing its petition for chapter 11 relief as an SARE on September 22, 2009, Debtor filed its Proposed Plan of Reorganization (the "Plan") on December 21, 2009. *See* Petition [Docket No. 1]; Plan [Docket No. 31]. The Plan states that "[i]n the near future, the Debtor will file a Disclosure Statement describing the Plan, the Plan

11148281.1

- 2 -

confirmation process and related information." See Plan, at 1:18-20. To date, Debtor still has not filed a Disclosure Statement. There is no foreseeable date when the Court will hold oral argument on the proposed Plan or inchoate Disclosure Statement. Thus, even assuming the Plan has a reasonable likelihood of confirmation, it is not likely to be confirmed in a reasonable time.

B.      **The Plan Is Not Reasonably Likely to Be Confirmed Because It Is Not Feasible**

Section 362(d)(3) requires that an SARE's plan have a reasonable likelihood of confirmation. 11 U.S.C. § 362(d)(3). The purpose of Section 362(d)(3) is to address "abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully." Collier on Bankruptcy ¶ 362[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citations omitted). A key component of confirmation is feasibility. Here, Debtor's Plan is not feasible.

Section 1129(a)(11) provides the statutory basis for the feasibility requirement. Before a court confirms a plan, it requires the court to first determine that confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor unless such liquidation or reorganization is proposed in the plan. See 11 U.S.C. § 1129(a)(11); *In re Sagewood Manor Associates Limited Partnership*, 223 B.R. 756, 762 (D. Nev. 1998); see also *Kane v. Johns-Mansville Corp.*, 843 F.3d 636 (2nd Cir. 1988) ("[t]he feasibility standard under this section is whether the plan offers a reasonable assurance of success[;] [i]n this regard, success need not be guaranteed"). While the debtor need not prove that its plan's success is inevitable or guaranteed, a plan must be supported by adequate evidence that some reasonable assurance of success exists. See *In re Smith*, 357 B.R. 60, 69 (Bankr. M.D.N.C. 2006); *In re Brotby*, 303 B.R. 177, 191 (BAP 9th Cir. 2003). Thus, the focus is on the viability of the reorganized debtor, and its ability to meet its future obligations, both as provided for in the plan and as may be incurred in operations. *Sagewood Manor*, 223 B.R. at 763 (citations omitted).

The purpose of the feasibility requirement "is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." See *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy ¶1129.02[11] at 1129-34 (15th ed.

11148281.1

1984). The Nevada Bankruptcy Court summarized the relevant factors in determining whether a particular plan is feasible as follows:

> (1) the adequacy of the debtor's capital structure;
> (2) the earning power of its business;
> (3) economic conditions;
> (4) the ability of the debtor's management;
> (5) the probability of the continuation of the same management; and
> (6) any related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions in the plan.

*In re Trans Max Tech.s, Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006) (citations omitted). Here, Debtor has an inadequate capital structure, negative earning power and, in short, no funds or prospect of funds to make its Plan viable.

Debtor has provided no evidence of its ability to make the payments forecasted in the Plan. The Plan states that "[t]he Disclosure Statement contains a discussion of the Debtor, the results of its operations, significant events occurring before and during the bankruptcy case and a summary and analysis of this Plan." *See* Plan, at 1:22-25. But, as discussed above, Debtor has yet to file a Disclosure Statement, and the parties are left with an information vacuum as to how Debtor intends to fund the Plan.

Without any evidence of Debtor's future ability to pay, the analysis turns to its past performance. Review of Debtor's monthly reports shows that Debtor has systematically sustained disproportionate losses since filing its chapter 11 petition. Copies of the October [Docket No. 29], November [Docket No. 32], and December [Docket No. 41] Monthly Operating Reports are attached hereto as Exhibit 1. Review of these reports shows that in September 2009, Debtor had losses of approximately $252,032.00, and cash receipts of $500.13. *See* October Monthly Operating Report, Exhibit 1, at p. 1. In October 2009, Debtor had losses of approximately $304.00, and $0.00 in cash receipts. *Id.* In November 2009, Debtor had losses of approximately $22,622.00, and $3,500.00 in cash receipts. *See* November Operating Report, Exhibit 1, at p. 1. In December 2009, Debtor had losses of $111,693.00, and $0.00 in cash receipts. *See* December Operating Report, Exhibit 1, at p. 1. In sum, Debtor is operating

11148281.1

at a severe loss.[1]

The fact that Debtor has not made a monthly payment to CNB since November 2008 further evidences Debtor's dire economic straits. See Declaration of Kevin McKenna in Support of Motion for Relief from Automatic Stay [Docket No. 35], at § 12. Based on Debtor's defaults, CNB has filed a proof of claim for $3,841,841.89, plus accruing interest, attorneys' fees, and costs. See Proof of Claim No. 7-1, attached hereto as Exhibit 2. Debtor contends that "... the payment of rent by Sutter to the Debtor is a mere formality because the income derived from the operation of the adult cabaret has been for the benefit of both the Debtor and Sutter." See Opp., at 2:21-23. But those rental payments are Debtor's only apparent income and, from CNB's perspective, are much more than a "mere formality." They are the sole source of funds for Debtor's payments to CNB. Debtor has presented no evidence showing that Sutter will be able to cure its deficiencies or begin making monthly rental payments anytime soon.[2] In short, Debtor's sole source of income is nonperforming, with no apparent prospects for improvement.

Because the Plan is not "feasible" pursuant to Section 1129(a)(11), and is not reasonably likely to be confirmed in a reasonable time, the Court should immediately terminate the stay pursuant to Section 329(d)(2).

C.  **The Plan Is Not Likely to Be Confirmed Because It Proposes Unreasonable Terms with CNB, Specifically a 28-Year Payment Plan Beginning With Two Years of Interest-Only Payments and an Initial 2% Rate of Interest**

As discussed in the Motion, Section 1129(b)(2)(A) requires a plan to be "fair and equitable" with respect to secured claims. See Mot., pp. 5-6. The Plan proposes a 28-year payment stream to CNB, with the first two years comprised solely of "interest-only" payments

---

[1] In a sharp rise from October's cash assets of $841.00, Debtor's November and December Monthly Operating Reports indicate current cash assets of $606,665.00 and $606,017.00, respectively. See Exhibit 1. At first glance, this seems promising. These sums are described as Debtor's "Accounts receivable (net)," and reference Debtor's Schedule A. See November and December Monthly Reports, Exhibit 1, at pp. 3. The only asset listed in Debtor's Schedule A is the real property at issue, and subject to CNB's lien. The accounts receivable figures most likely reflect the amount listed as "due from Sutter" in the October Monthly Report, or $606,665.00. In other words, Debtor has not experienced increased income in the past few months. The adjusted cash assets formula simply reflects that tenant Sutter Street Investments, LLC ("Sutter") has not been paying the rent due Debtor, rather than an influx of capital.

[2] In the event the Court does not grant CNB relief from stay at the hearing on the Motion set for February 10, 2010, CNB reserves its right to object to the employment of Debtor's counsel as counsel for tenant Sutter.

11148281.1

at a 2% interest rate. *See* Plan, at pp. 12-13. The Promissory Note was due on June 6, 2009. *See* Mot., at 7:5. Debtor's Plan would tie CNB to Debtor for an additional 28 years. For the reasons addressed in the Motion, Debtor's Plan is not "fair and equitable," and is thus not likely to be confirmed.

### D. This Bankruptcy Case Is Essentially a Two-Party Dispute Between Lender and Borrower

It is important to note that this bankruptcy case is basically a dispute between Debtor and its secured creditors. Secured creditors with liens on the Property include CNB, Bank of Nevada, and Triad Leasing & Financial, Inc. *See* Schedule D [Docket No. 19]. Debtor's remaining creditors are, with the exception of under $1,000 in unsecured debt, all insiders of the Debtor. *See* Schedule F [Docket No. 19] (indicating a $251.74 bill owed the Las Vegas Valley Water District, and a $475.00 debt owed Reeder, Lu & Green LLP). The remaining unsecured creditors listed on Schedule F are as follows:

- David Frank – Mr. Frank personally guaranteed the Promissory Note. See McKenna Decl., at ¶ 11(b). He is also the principal of Resort Entertainment Companies, LLC ("REC"). *See* Nevada Secretary of State information for REC, attached as Exhibit 3. REC is the manager of Debtor. *See* Nevada Secretary of State information for Debtor, attached as Exhibit 4. Mr. Frank also owns 15.28% of Debtor directly. *See* Statement No. 21 [Docket No. 19].

- Merlin's Highland, LLC – REC is the manager of Merlin's Highland, LLC. *See* Nevada Secretary of State information for Merlin's Highland, LLC, attached as Exhibit 5.

- Mid Valley Enterprises, LLC – REC is the manager of Mid Valley Enterprises, LLC. *See* Nevada Secretary of State information for Mid Valley Enterprises, LLC, attached as Exhibit 6.

- REC – As discussed above, REC is the manager of Debtor, and Mr. Frank is the manager of REC. *See* Exhibits 3 and 4.

11148281.1

- 6 -

In addition, there is approximately $3,162.90 owing to the Clark County Treasurer. *See* Schedule E [Docket No. 19]. In short, this is not a case involving multitudes of unsecured creditors with claims on any equity the Property might possess. Rather, this is essentially a two-party dispute between lender and borrower.[3] Once a creditor has met its burden to show "cause" in such a situation, stay relief is particularly warranted. As discussed above, CNB has more than met its burden.

### III.

### CONCLUSION

For the reasons discussed above, CNB respectfully requests that the Court grant its Motion pursuant to Section 362(d).

DATED this 4th day of February, 2010.

SNELL & WILMER L.L.P.

By: /s/ Claire Y. Dossier
Robert R. Kinas, Esq. (NV Bar 6019)
Claire Y. Dossier, Esq. (NV Bar No. 10030)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
*Attorneys for City National Bank*

---

[3] As noted in CNB's appraisal, and the evidence of zero cash flow addressed above, there is no equity in the Property.

11148281.1

-7-